**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| In re: NATIONAL CITY CORPORATION SECURITIES, DERIVATIVE & ERISA LITIGATION | : | Case No. 08-nc-70000 |
|  | : | JUDGE SOLOMON OLIVER, JR. |
| This Document Relates to: The ERISA Cases | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF
EXPENSES AND CASE CONTRIBUTION AWARDS**

**BARROWAY TOPAZ KESSLER
  MELTZER & CHECK, LLP**
Joseph H. Meltzer
Edward W. Ciolko
Mark K. Gyandoh
280 King of Prussia Road
Radnor, PA 19087
Tel.: (610) 667-7706
Fax: (610) 667-7056

**STULL, STULL & BRODY**
Edwin J. Mills
Michael Klein
6 East 45th Street 5th Floor
New York, NY 10017
Tel.: (212) 687-7230
Fax: (212) 490-2022

*Interim Co-Lead Counsel for ERISA Plaintiffs*

**GOLDMAN SCARLATO &
  KARON, P.C.**
Daniel R. Karon
55 Public Square Drive, Suite 1500
Cleveland, OH 44113
Telephone: (216) 622-1851
Facsimile: (216) 622-1852

*Interim Liaison Counsel for ERISA Plaintiffs*

## TABLE OF CONTENTS

I.      INTRODUCTION ...........................................................................................................2

II.     FACTUAL AND PROCEDURAL BACKGROUND............................................................5

        A.      Description of the Action ....................................................................................5

        B.      Investigation of Claims and Plaintiffs' Complaint ................................................6

        C.      Summary of the Litigation ..................................................................................7

        D.      Discovery Undertaken ........................................................................................8

        E.      Settlement Negotiations .....................................................................................9

        F.      The Proposed Settlement ..................................................................................10

III.    REQUEST FOR ATTORNEYS' FEES ........................................................................11

        A.      There is a Preference in the Sixth Circuit for the Percentage of the Fund Approach
                to Fee Determination ........................................................................................11

        B.      Class Counsel's Fee Request Is Reasonable In Light of The Sixth Circuit's
                Criteria for Determining Appropriateness of Fee Requests ...............................12

                1.      The Value of the Benefit Rendered to the Class ......................................13

                2.      Society's Stake in Rewarding Attorneys who Produce such Benefits in
                        Order to Maintain an Incentive to Others .................................................16

                3.      Whether Class Counsel's Services were Undertaken on a Contingent Fee
                        Basis ......................................................................................................17

                4.      The Value of the Services on an Hourly Basis .........................................19

                5.      The Complexity of the litigation .............................................................21

                6.      The Professional Skill and Standing of Counsel on Both Sides ...............22

        C.      Awards In Similar Cases....................................................................................25

        D.      Lodestar Cross-Check And Multiplier.................................................................27

        E.      Reimbursement And Payment of Class Counsel's Expenses ..............................29

        F.      Case Contribution Awards For Named Plaintiffs.................................................29

IV.    CONCLUSION...................................................................................................................31

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Adams v. Standard Knitting Mills, Inc.*,
   [1978 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 96,377 (E D. Tenn. Jan. 6, 1978)...........27

*Berger v. Xerox Corp. Ret. Income Guarantee Plan*,
   No. 00-CV-584, 2004 WL 287902 (S.D. Ill. Jan. 22, 2004)......................................32

*Board of Trustees of the AFTRA Retirement Fund, et al. v. JPMorgan Chase Bank, N.A., et al.*,
   No. 09-CV-00686 (S.D.N.Y. May 28, 2009)..........................................................25

*Bogosian v. Gulf Oil Corp.*,
   621 F. Supp. 27 (E.D. Pa. 1985) ......................................................................31

*Boston & Maine Corp. v. Sheehan, Phinney, Bass & Green, P.A.*,
   778 F.2d 890 (1st Cir. 1985)...........................................................................30

*Bowling v. Pfizer*,
   102 F.3d (6th Cir. 1996) ................................................................................20

*Brieger v. Tellabs, Inc.*,
   473 F. Supp. 2d 878 (N.D. Ill. 2007) ................................................................25

*Brieger v. Tellabs*,
   No. 06-cv-1882, 2009 WL 1565203 (N.D. Ill. June 1, 2009).................................20

*Camden I Condo. Ass'n v. Dunkle*,
   946 F.2d 768 (11th Cir. 1991) ........................................................................12

*Casey v. National City Corp., et al.*,
   Case No. 1:08-nc-70004-SO (N.D. Ohio July 30, 2009)..........................................2

*Cosgrove v. Sullivan*,
   759 F. Supp. 166 (S.D.N.Y. 1991) ...................................................................29

*Crosby v. Bowater Inc. Ret. Plan for Salaried Employees of Great N. Paper, Inc.*,
   262 F. Supp. 2d 804 (W.D. Mich. 2003) ............................................................17

*Dann v. Lincoln National Corp. et al.*,
   No. 08-CV-5740 (E.D.P.A. June 1, 2009).............................................................25

*Dann v. Lincoln National Corp. et al.*,
   No. 08-CV-5740, 2010 WL 1644276 (E.D. Pa. Apr. 20, 2010) ...............................25

*DiFelice v. U.S. Airways, Inc.*,
  436 F. Supp. 2d 756 (E.D. Va. 2006), *affirmed,* 497 F.3d 410 (4th Cir. 2007)......................20

*Dresslar v. Wellpoint, Inc. et al.*,
  No. 08-CV-00679-DFH-TAB (S.D. Ind. May 22, 2008) ........................................................25

*Eltman v. Grandma Lee's Inc.*,
  No. 82-CV-1912, 1986 U.S. Dist. LEXIS 24902 (E.D.N.Y. May 28, 1986) .........................17

*Enter. Energy Corp. v. Columbia Gas Transmission Corp.*,
  137 F.R.D. 240 (S.D. Ohio 1991) ........................................................................................29

*Evans v. Akers, et. al,*
  No. 04-CV-11380 (D. Mass.) ................................................................................................21

*Feerer v. Amoco Prod. Co.*,
  242 F.3d 1259 (10th Cir. 2001) ...........................................................................................31

*Gee v. UnumProvident Corp., et al,*
  No. 03-CV-147 (E.D. Tenn. Jan. 25, 2008)...........................................................................27

*Gee v. UnumProvident Corp.*,
  No. 03-CV-1552 (E.D. Tenn.) ...............................................................................................25

*Geier v. Sundquist,*
  372 F.3d 784 (6th Cir. 2004) ...............................................................................................11

*Goldberger v. Integrated Res. Inc.*,
  209 F.3d 43 (2d Cir. 2000).....................................................................................................12

*Grant v. AOL Time Warner, Inc.*,
  No. 02-CV-8853, MDL Docket No. 1500, 2003 U.S. Dist. LEXIS 16895
   (S.D.N.Y. Sept. 23, 2003).....................................................................................................25

*Hanna v. YRC Worldwide, Inc. et al.*,
  No. 09-cv-02593-JWL/JPO (D. Kan. Mar. 2, 2010) .............................................................25

*Harman v. Lyphomed, Inc.*,
  945 F.2d 969 (7th Cir. 1991) ................................................................................................12

*In re ADC Telecomm., Inc.*,
  No. 03-CV-2989 (D. Minn. Oct. 16, 2006) ...........................................................................28

*In re Advanta Corp. ERISA Litig.*,
  No. 09-CV-04974 (E.D. Pa. June 4, 2010) ...........................................................................25

*In re Beazer Homes USA, Inc. ERISA Litig.*,
  No. 07-CV-00952-RWS (N.D. Ga. Apr. 30, 2007) ...............................................................25

*In re Bristol Meyers Squibb Co., ERISA Litig.*,
No. 02-10129 (S.D.N.Y. Oct. 12, 2005) (Order) ....................................................30

*In re Broadwing ERISA Litig.*,
No. 02-CV-00857 (S.D. Ohio 2002)........................................................................27

*In re Buspirone Antitrust Litig.*,
MDL Docket 1413 (S.D.N.Y. Order of April 7, 2003) ...........................................29

*In re Cendant Corp. PRIDES Litig.*,
243 F.3d 722 (3d Cir. 2001)....................................................................................28

*In re CMS ERISA Litig.*,
Master File No. 02-72834 (E.D. Mich June 27, 2006) ...........................................28

*In re Delphi Corp Sec., Derivative and "ERISA" Litig..*,
248 F.R.D. 483 (E. D. Mich. 2008) ...............................................11, 12, 20, 27

*In re Diebold ERISA Litig.*,
No. 06-CV-0170 (N.D. Ohio)...................................................................................25

*In re Dun & Bradstreet Credit Services Customer Litig.*,
130 F.R.D. 366 (S.D. Ohio. 1990)...........................................................................32

*In re Dynegy ERISA Litig.*,
No. 02-3076 (S.D. Tex. Nov. 24, 2004) (Final Order) ...........................................30

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995)......................................................................................12

*In re Hartford Fin. Svc. Grp. Inc. ERISA Litig.*,
No. 08-CV-01708, 2010 WL 135186 (D. Conn. Jan. 13, 2010).............................25

*In re Honeywell ERISA Litig.*,
No. 03-CV-1214 (D.N.J. 2006) ...............................................................................30

*In re Household Int'l, Inc. ERISA Litig.*,
No. 02-CV-07921 (N.D. Ill. Nov. 22, 2004)............................................................28

*In re Household Int'l, Inc. ERISA Litig.*,
No. 02-CV-7921 (N.D. Ill. Nov. 22, 2004)..............................................................32

*In re Household International, Inc. ERISA Litig.*,
No. 02-07921 (N.D. Ill. filed Nov. 22, 2004) .........................................................30

*In re Huntington Bancshares ERISA Litig.*,
No. 08-CV-00197 (S.D. Ohio)..................................................................................25

*In re Huntington Bancshares Inc. ERISA Litig.*,
No. 08-CV-0165, 2009 WL 330308 (S.D. Ohio Feb. 9, 2009) ...............................................19

*In re Lear ERISA Litig.*,
No. 06-CV-11735 (E.D. Mich. 2006) .....................................................................................27

*In re Lear ERISA Litig.*,
No. 06-CV-11735 (E.D. Mich. Apr. 10, 2006).........................................................................25

*In re Lorazepam & Clorazepate Antitrust Litig.*,
205 F.R.D. 369 (D.D.C. 2002)..............................................................................................16

*In re Merck & Co., Inc. Vytorin ERISA Litig.*,
No. 08-CV-1974, 2009 WL 2834792 (D.N.J. Sept. 1, 2009) .................................................25

*In re Mirant Corp. ERISA Litig.*,
No. 03-CV-1027-RWS (N.D. Ga. Nov. 16, 2006) (Order of Final Judgment granting
27.5% of common fund award) .............................................................................................28

*In re National City Corp. Sec., Derivative & ERISA Litig.*,
No. 109-nc-70002-SO (N.D. Ohio Apr. 26, 2010) ......................................................4, 27, 32

*In re Newbridge Networks Sec. Litig.*,
No. 94-cv-1678, 1998 U.S. Dist. LEXIS 23238 (D.D.C. Oct. 22, 1998) ...............................23

*In re R.H. Donnelley ERISA Litig.*,
No. 09-CV-07571 (N.D. Ill. Mar. 16, 2010).........................................................................25

*In re Remeron Direct Purchaser Antitrust Litig.*,
No. 03-CV-0085, 2005 WL 3008808 (D.N.J. Nov. 9, 2005) ..................................................32

*In re Rio Hair Naturalizer Prods. Liab. Litig.*,
No. MDL 1055, 1996 WL 780512 (E.D. Mich. Dec. 20, 1996).......................................4, 17

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005).................................................................................................27

*In re Rite Aid Corp. Secs. Litig.*,
146 F. Supp. 2d 706 (E.D. Pa. 2001) ...................................................................................29

*In re Schering Plough Corp.*,
No. 03-CV-1204, 2008 WL 4510039 (D.N.J. Sept. 30, 2008) .........................................15, 18

*In re Sprint Corp. ERISA Litig.*,
443 F. Supp. 2d 1249 (D. Kan. 2006)...............................................................................20, 23

*In re Sulzer Hip Prosthesis and Knee Prosthesis*,
268 F. Supp. 2d 907 (N.D. Ohio 2003)............................................................................11, 12

*In re Telectronics Pacing Systems, Inc.,*
  137 F. Supp. 2d 1029 (S.D. Ohio 2001) ...................................................................18, 30

*In re Union Carbide Corp. Consumer Products Business Sec. Litig.,*
  724 F. Supp. 160 (S.D.N.Y. 1989) ...................................................................................28

*In re Visteon Corp. ERISA Litig.,*
  No. 05-CV-71205 (E.D. Mich. March 9, 2007)...............................................................27

*In re Warner Commc'ns Sec. Litig.,*
  618 F. Supp. 735 (S.D.N.Y. 1985) ...................................................................................26

*In re Westar Energy, Inc., ERISA Litig.,*
  No. 03-CV-4032 (D. Kan. July 27, 2006)........................................................................28

*In re WorldCom, Inc. ERISA Litig.,*
  No. 02-CV-4816, 2004 U.S. Dist. LEXIS 20671 (S.D.N.Y. October 18, 2004)....................17

*In re Xerox Corp. ERISA Litig.,*
  No. 02-CV-1138 (D. Conn. Apr. 14, 2009) (Order granting motion for 30% of
  settlement amount as Attorneys' Fees) ..........................................................................27

*In re: Cardinal Health ERISA Litigation,*
  225 F.R.D. 552 (S.D. Ohio 2005) ...................................................................................25

*In re: SLM Corp. ERISA Litig., et al.,*
  Master File No. 08-CV-4334 (S.D.N.Y. Sept. 30, 2008) .......................................................25

*Johnston v. Comerica Mortgage Corp.,*
  83 F.3d 241 (8th Cir. 1996) .............................................................................................12

*Kling v Fidelity Mgmt. Trust Co.,*
  No. 01-CV-11939 (D. Mass. June 29, 2006) ...................................................................28

*Koch v. Dwyer,*
  No. 98-CV-05519 (S.D.N.Y. May 7, 2002)......................................................................28

*Kogan v. Aimco Fox Chase, L.P.,*
  193 F.R.D. 496 (E.D. Mich. 2000) ..................................................................................18

*Kolar v. Rite Aid Corp,*
  No. 01-CV-1229, 2003 U.S. Dist. LEXIS 3646 (E.D. Pa. Mar. 11, 2003)............................30

*Landgraff v. Columbia Healthcare Corp.*
  No. 98-cv-0090, 2000 U.S. Dist. LEXIS 21831 (M.D. Tenn. May 24, 2000), *affirmed,*
  30 Fed. Appx. 366 (6th Cir. 2002)..................................................................................20

*Manners v. Am.Gen. Life Ins. Co.*,
  No. 98-CV-266, 1999 U.S. Dist. LEXIS 22880 (M.D. Tenn. Aug. 11,1999) ........................29

*Mashburn v. Nat'l Healthcare, Inc.*,
  684 F. Supp. 660 (M.D. Ala. 1988) ....................................................................................17

*Mehling v. New York Life Ins. Co., et al.*
  248 F.R.D. 455 (E.D. Pa. 2008)....................................................................................27, 32

*Nelson v. IPALCO Enter., Inc.*.
  480 F. Supp. 2d 1061 (S.D. Ind. 2007), *affirmed*, 512 F.3d 347 (7th Cir. 2008) ...................20

*Nowak v. Ford Motor Co.*,
  No. 06-CV-11718 (E.D. Mich.) ........................................................................................25

*Oh v. AT & T Corp.*,
  225 F.R.D. 142 (D.N.J. 2004) ............................................................................................31

*Overby v. Tyco Int'l Ltd.*,
  No. 2-CV-1357-B (D.N.H. Dec. 20, 2002).........................................................................26

*Ramey v. Cincinnati Enquirer, Inc.*,
  508 F.2d 1188 (6th Cir 1974) .....................................................................................13, 26

*Rankin v. Rots*,
  No. 02-CV-71045 (E.D. Mich. June 27, 2006).....................................................................32

*Rankin v. Rots*,
  No. 02-cv-71045, 2006 WL 1791377 (E.D. Mich. June 27, 2006) ......................13, 16, 17, 20

*Rawlings v. Prudential-Bache Props., Inc.*,
  9 F.3d 513 (6th Cir. 1993) ......................................................................................12, 28, 29

*RJR Nabisco Inc. Sec. Litig.*,
  MDL No. 818, 1992 WL 210138 (S.D.N.Y. Aug. 24, 1992) ..................................................30

*Six Mexican Workers v. Arizona Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990) ............................................................................................12

*Smith v. Krispy Kreme Doughnut Corp.*,
  No. 05-CV-00187, 2007 WL 119157 (M.D.N.C. Jan. 10, 2007) ..........................................23

*Spivey v. Southern Co.*,
  No. 04-CV-1912-RWS (N.D. Ga. August 11, 2007)............................................................28

*Summers v. State Street*,
  453 F.3d 404 (7th Cir. 2006) ..................................................................................15, 18, 19

*Swedish Hosp. Corp. v. Shalala,*
　1 F.3d 1261 (D.C. Cir. 1993) ................................................................12

*Thornton v. E. Tex. Motor Freight,*
　497 F.2d 416 (6th Cir. 1974) ...............................................................31

*UAW v. Gen. Motors Corp.,*
　No. 05-CV-73991, 2006 WL 891151 (E.D. Mich. Mar. 31, 2006) ........14

*Van Vranken v. Atlantic Richfield Co.,*
　901 F. Supp. 294 (N.D. Cal. 1995) .......................................................32

*Weiss v. Mercedes-Benz of N. Am., Inc.,*
　899 F. Supp. 1297 (D.N.J. 1995), *aff'd,* 66 F.3d 314 (3d Cir. 1995)......29

*Williams v. Vukovich,*
　720 F.2d 909 (6th Cir. 1983) ...............................................................14

*Yap v. Sumitomo Corp. of Am.,*
　No. 88-CV-700, 1991 WL 29112 (S.D.N.Y. Feb. 22, 1991)..................32

## STATE CASES

*In Re National City Corp. Shareholders Litig.,*
　C.A. No. 4123-CC (Del. Chancery)........................................................9

*In re Triangle Indus. S'holders Litig.,*
　No. 10,466, 1991 Del. Ch. LEXIS 203 (Del. Ch. Dec. 19, 1991) .........29

## FEDERAL STATUTES

29 U.S.C. §§ 1109 and 1132 .....................................................................5

29 U.S.C. § 1132(a) ................................................................................16

Employee Retirement Income Security Act of 1974 ..................................2

## RULES

FED. R. CIV. P. 12(b)(6) ............................................................................7

FED. R. CIV. P. 26(f) ...........................................................................7, 22

Federal Rules of Civil Procedure 12 and 56 ...........................................19

Contemporaneously with the submission of their motion for final approval of the Settlement Agreement[1] in this matter, Interim Co-Lead Plaintiffs James Elsinghorst and Barbara Grosick ("Co-Lead Plaintiffs") and Plaintiffs Sharon A. Deucher, Deborah Douglas, Charles C. Gunning, Robert Huenefeld, Rita Klabenesh, Rodolfo Ranallo, Jr., George Rithianos, Loretta D. Rogers, Robert Steinberg, and Ella R. Whitlow (collectively "Named Plaintiffs" or "Plaintiffs"), participants in the National City Savings and Investment Plan (the "Plan"), respectfully submit this Memorandum in Support of their Motion for an Award of Attorneys' Fees, reimbursement of expenses, and Case Contribution Awards.  The motion seeks an award of attorneys' fees of $8 million which represents 18.6 percent of the Settlement Fund of $43 million and reimbursement of out-of-pocket costs and expenses in the amount of $160,867.39.  Plaintiffs also request that the Court approve the payment of case contribution awards in an amount of $7,500.00 for each Co-Lead Plaintiff and $2,000.00 for the remaining Named Plaintiffs.[2]

The attorneys' fees sought is substantially below the 30%, or $12,900,000.00, preliminarily approved by the Court on August 27, 2010 as the highest amount Plaintiffs' Counsel could have requested, which Defendants did not object to, and was included in the Class Notice.  Plaintiffs seek an award of fees and expenses only on behalf of Class Counsel and the additional Plaintiffs' counsel who did work on this case pursuant to direction of Co-Lead Counsel and who followed the time reporting requirements established by Co-Lead Counsel in an effort to avoid duplicative or

---

[1]  The Settlement Agreement is attached as Exhibit A to the "Ciolko Decl." (defined below).  The provisions of the Settlement Agreement, including all definitions and defined terms, are incorporated by reference herein.  Thus, all capitalized terms not otherwise defined in this Memorandum of Law shall have the same meaning as ascribed to them in the Settlement Agreement.

[2]  For the Court's convenience, a copy of a [Proposed] Order Awarding Plaintiffs' Counsel Attorneys' Fees and Reimbursement of Expenses and Plaintiffs' Case Contribution Awards is attached to the accompanying Motion.

unproductive activities.

## I.    INTRODUCTION

On August 27, 2010, the Court preliminarily approved the proposed Settlement of this case for $43 million.  Class Counsel[3] fought and negotiated vigorously for the Class, ultimately achieving a recovery through settlement that is exceptional particularly in light of the potential damages and litigation risks present in this case.  Here, the cash recovery for the Class is believed to rank in the top 15% of recoveries among the top one hundred ERISA company stock fiduciary breach class settlements ever achieved.[4]  The proposed Settlement is also particularly impressive when compared to the result obtained to date in the parallel securities litigation which arose out of facts similar to this case.  In that action, a report and recommendation to dismiss the action in part has been issued by the Magistrate Judge.[5]  Moreover, the related "derivative action" against National City was dismissed on the pleadings and resulted in no recovery for plaintiffs in that action (Docket No. 116 (Oct. 7, 2009).  The award of attorneys' fees that Class Counsel seek is compensation for their efforts in bringing this action to a favorable conclusion and for undertaking the considerable risks associated with prosecuting this Action with no guarantee of receiving any compensation at all.[6]

---

[3] "Class Counsel" refers to Co-Lead Counsel Stull, Stull & Brody ("SSB") and  Barroway Topaz Kessler Meltzer & Check, LLP ("BTKMC") and counsel for Plaintiffs, Goldman Scarlato & Karon, P.C.; McTigue & Veis LLP; Bailey & Glasser LLP; Major Khan, LLC; Gainey & McKenna; Liner Yankelevitz Sunshine & Regenstreif, LLP; and Robbins Gellar Rudman & Dowd, LLP.

[4]      *See* ERISA Class Action Settlements & Attorney Fees Chart, maintained at http://erisasettlements.com/press/ERISA-Chart.pdf, updated Feb. 2, 2010.

[5] *See Casey v. National City Corp., et al.*, Case No. 1:08-nc-70004-SO (N.D. Ohio July 30, 2009) (Report & Recommendation granting in part and denying in part defendants' Motion to Dismiss).

[6]  It should also be noted as described in greater detail herein that the fee requested does not reflect the significant, ongoing role Class Counsel, and in particular, Co-Lead Counsel, will undertake in the administration of the Settlement.

Indeed, Class Counsel undertook great risk in the prosecution of this action and faced considerable challenges.  There is no doubt that lawsuits of this type brought pursuant to ERISA face significant risks as they involve complex and still evolving law.  As detailed below, the risks included the very real possibility that, despite their best efforts, the Class would have received *less* monetary damages than the Class Settlement Amount or even nothing at all if this case proceeded through trial.  For example, had the litigation continued, Defendants would have argued, among other things, that the true class period was much shorter than Plaintiffs' alleged Class Period, resulting in much lower potential damages for the Plan.  Moreover, to the best of Class Counsel's knowledge, no plaintiff has ever succeeded at trial in an ERISA "company-stock" class action.  In sum, Plaintiffs and Class Counsel are proud of the Settlement achieved and believe this to be an excellent result for the Class.

Despite the attendant risks involved in bringing the Action, Class Counsel thoroughly investigated the merits of, and then filed, this Action.  In the end, this Settlement, which was achieved by the skill, creativity, perseverance and hard work of Class Counsel, offers significant relief for the Plan and its participants.[7]  The requested fee of 18.6 % of the total recovery, is *less* than the median fee award "as a percentage of the fund" in ERISA actions, which is 25% (*see*, Theodore Eisenberg and Geoffrey P. Miller, Attorney Fees and Expenses in Class Action Settlements: 1993–

---

[7]  The extensive efforts of Class Counsel in achieving this excellent result are summarized below and described in (1) the Declaration of Edward W. Ciolko in Support of Plaintiffs' Motion for Final Approval of Settlement, Certification of Settlement Class and the Approval of the Plan of Allocation, and Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses and Case Contribution Awards (the "Ciolko Declaration" or "Ciolko Decl."), (2) the Declaration of Edwin J. Mills in Support of Plaintiffs' Motion for Final Approval of Settlement, Certification of Settlement Class and the Approval of the Plan of Allocation, and Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses and Case Contribution Awards (the "Mills Declaration" or "Mills Decl."), and the (3) Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Settlement, Certification of Settlement Class, and Approval of the Plan of Allocation ("Final Approval Mem." or "Final Approval Memorandum").  Plaintiffs fully incorporate the contents of each of these filings into the instant submission, including the terms defined formally therein.

2008, 7 Journal of Empirical Legal Studies 248, 262 (Table 5)), and is justified under the factors considered by courts in this Circuit in determining fee awards. *See, e.g.*, *In re Rio Hair Naturalizer Prods. Liab. Litig.*, No. MDL 1055, 1996 WL 780512, at *16 (E.D. Mich. Dec. 20, 1996) (noting that fee awards are "typically . . . 20 to 50 percent of the fund"); *see also In re National City Corp. Sec., Derivative & ERISA Litig.*, No. 109-nc-70002-SO (N.D. Ohio Apr. 26, 2010) (Order and Final Judgment) (awarding attorneys' fees of 33% of the settlement fund). Plaintiffs themselves greatly contributed to the Settlement as well. From the outset, Plaintiffs actively participated in this litigation, expending significant amounts of their own time and insight to benefit the Settlement Class. They supplied relevant documentation; reviewed and approved pleadings; assisted with Class Counsel's investigation into the facts relating to the action; and were involved in settlement discussions.

After mailing the approved form of Notice to 57,046 Class Members, Class Counsel have only received one objection thus far to their application for a fee award.[8] The objection, which is addressed in more detail below, is unsupported by facts or law. By only filing one objection thus far, the Class members have demonstrated their belief that the requested attorneys' fees, expenses and Named Plaintiff Case Contribution awards are fair and reasonable. It is also noteworthy that Class Counsel is in fact seeking an amount of attorneys' fees which is significantly less than the 30% of the Settlement Fund they could have sought from the Court without objection from Defendants.

For all of these reasons, and as demonstrated below, the requests for fees, expenses and case contribution awards should be approved.

---

[8] The deadline for objecting to the Settlement, including Class Counsel's application for fees and reimbursement of expenses has not yet elapsed. Per the Preliminary Approval Order, objectors have until November 9, 2010 to file objections. To the extent additional objections are filed, Class counsel will submit a supplemental brief to the Court prior to the Final Fairness Hearing addressing these objections.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      Description of the Action

Plaintiff James Elsinghorst, a former employee of National City and participant in the Plan, filed his initial class action complaint on January 10, 2008 pursuant to §§ 409 and 502 of ERISA, 29 U.S.C. §§ 1109 and 1132, against National City and certain other alleged named and unnamed fiduciaries of the Plan, who allegedly are and were responsible for the investment of the Plan's assets.  Thereafter, six additional, substantially identical, cases were filed in this Court.  By Order dated April 8, 2008, the Court consolidated the then-filed ERISA cases as well as any ERISA case thereafter filed in or transferred to the Northern District of Ohio arising out of the same facts and claims.  By Order dated May 12, 2008, the Court appointed James Elsinghorst and Barbara Grosick as Co-Lead Plaintiffs.  The same Order designated BTKMC and SSB as Interim Co-Lead Counsel and Goldman Scarlato & Karon, P.C. as Interim Liaison Counsel.

On June 26, 2008, Co-Lead Plaintiffs filed a Consolidated Complaint for Violations of ERISA ("Complaint").  Plaintiffs allege in Count I that Defendants breached their fiduciary duties to the Plan and its participants by failing to prudently and loyally manage the Plan's investment in Company securities by (1) continuing to offer National City stock as a Plan investment option when it was imprudent to do so; and (2) maintaining the Plan's pre-existing heavy investment in National City stock when Company stock was no longer a prudent investment for the Plan.  Compl., ¶ 5.

Plaintiffs' Count II alleges that Defendants failed to adequately inform the Plan's participants about the true risk and return characteristics of National City's stock, including by failing to adequately inform the participants about the true state of affairs with respect to National City's subprime mortgage operations.  Compl., ¶ 6.  Plaintiffs' Count III alleges that certain Defendants breached their fiduciary duties by failing to adequately monitor other persons to whom management/administration of Plan assets was delegated, despite the fact that such Defendants knew

or should have known that such other fiduciaries were imprudently allowing the Plan to continue offering National City stock as an investment option.  Compl., ¶ 7.

Plaintiffs' Count IV alleges that certain Defendants failed to avoid or ameliorate inherent conflicts of interests which crippled their ability to function as independent, "single-minded" fiduciaries with only the Plan's and its participants' best interests in mind.  Compl., ¶ 8.  Plaintiffs' Count V alleges that the Administrative Committee of the Plan breached its fiduciary duties by authorizing or causing the Plan to invest in Allegiant Funds, a family of funds established, managed, and distributed by Allegiant Management.  Compl., ¶ 9.  These actions by the Plan's fiduciaries allegedly resulted in breaches of the duties of prudence and loyalty under ERISA § 404(a)(1)(A) and (B).  Lastly, Plaintiffs' Count VI alleges that the Administrative Committee of the Plan knew or should have known that the Plan was engaged in transactions which constituted sales or exchanges of property between the Plan and parties-in-interest in violation of Sections 406(a) and (b) of ERISA.  Compl., ¶ 10.

### B.    Investigation of Claims and Plaintiffs' Complaint

Before filing the initial complaints in this matter, Co-Lead Counsel consulted with both accounting and ERISA experts,  reviewed pertinent, related cases, researched legal claims and reviewed voluminous public records regarding the Company.  The same scope of research, and further consultations with experts, were performed in filing Plaintiffs' 119 page, 331 paragraph Complaint.  The use of experts, especially accounting experts, at such an early stage of the litigation is unusual in these types of ERISA actions, but resulted in an exceptionally detailed complaint that fleshed out the intricate details of the imprudence claims in the Complaint.  Indeed, Co-Lead Counsel have conducted a thorough investigation into Plaintiffs' claims and allegations set forth in the Complaint.  These efforts included, but were not limited to, (i) review of documents produced by Defendants, including Plan-related documents in response to Plaintiffs' request for such documents

pursuant to ERISA §104(b) (described in further detail below), (ii) review of publicly-available materials relating to the Company and the Plan, (iii) analysis of specific corporate transactions, and (iv) interviews of former employees and Plan participants.   These efforts enabled Plaintiffs to identify as defendants the persons or entities with discretionary fiduciary authority or control over the Plan and its assets.  The Complaint details Defendants' operation and administration of the Plan.

### C.  Summary of the Litigation

This complex litigation was hotly contested by Defendants from the outset.  After the filing of the Complaint on June 26, 2008, Co-Lead counsel held several conference calls with counsel in the securities and shareholder derivative cases filed against National City, to draft an omnibus FED. R. CIV. P.  26(f) report ("Rule 26(f) Report").  These meetings occurred between July 16 and July 29, 2010 and were contentious at times.  The parties jointly filed the Rule 26(f) Report on August 1, 2008.

On September 10, 2008, Defendants filed a motion to dismiss the Complaint with prejudice pursuant to FED. R. CIV. P. 12(b)(6) (Dkt. No 32).   Defendants asserted, *inter alia*, that the Complaint should be dismissed because (1) Plaintiffs failed to exhaust their administrative remedies under the Plan; (2) that Defendants were required by the Plan's terms to maintain Company stock as an investment option for the Plan; (3) that Plaintiffs' "misrepresentation" claims should be dismissed for failure to allege detrimental reliance; and (4) the claims regarding the Allegiant Funds should be dismissed because it was not a "prohibited transaction" to offer the Allegiant Funds as a Plan investment option.   After the filing of the motion to dismiss, Defendants filed a motion on September 18, 2008 to reassign the consolidated ERISA case to a different judge  Plaintiffs filed extensive briefs opposing both these motions.  The consolidated matter was transferred to the docket of Judge Solomon Oliver, Jr. on October 30, 2008.  Subsequently, Plaintiffs filed an opposition to Defendants' motion to dismiss on October 27, 2008 (Dkt. No. 42) fully addressing each of

Defendants' points.  Thereafter, Defendants filed a reply in support of their motion to dismiss on December 5, 2008 (Dkt. No. 57).

After full briefing on Defendants' motion to dismiss, the Parties continued to submit notices of supplemental authority to the Court advising it of recently decided decisions that were relevant to Defendants' motion to dismiss.  On August 5, 2009, the Court referred Defendants' motion to dismiss to Magistrate Judge Nancy A. Vecchiarelli for a report and recommendation (Dkt. No. 104). On August 28, 2009, the Parties filed a joint motion asking the Court to temporarily withhold issuance of a report and recommendation because the Parties had initiated settlement discussions. (Dkt. No. 108).  The Court granted the Parties' request on October 8, 2009 issuing an order temporarily withholding issuance of a report and recommendation on Defendants' motion to dismiss while the Parties explored the possibility of settlement.  (Dkt. No. 109).  By letter dated February 12, 2010, the Parties informed the Court that they had reached a proposed Settlement and would file an appropriate motion with the Court once the Settlement had been finalized.  (Dkt. No. 120).

### D.    Discovery Undertaken

Plaintiffs have entered into this Settlement with a full and comprehensive understanding of the strengths and weaknesses of their claims, which are based on Co-Lead Counsel's extensive investigation during the prosecution of this Action as well as their unique experience with these claims.  As noted, before filing the Complaint, and afterward, Co-Lead Counsel consulted with merits and damages experts, reviewed pertinent cases, researched legal claims and reviewed voluminous public records regarding the Company.

Before agreeing to settle Plaintiffs' claims, Plaintiffs reviewed a significant quantity of Plan materials produced by Defendants at Plaintiffs' request under Section 104 of ERISA including, but not limited to, Plan documents, the Plan Statement of Investment Policy, Plan educational materials, Plan prospectuses, summary Plan descriptions and material modifications, trust agreements,

summary annual reports, and insurance information.  Plaintiffs also reviewed Plan participant data covering a multi-year period with regard to the National City Stock Fund, and retained well-known, non-testifying experts to review damages for the Prudence Claim and the Allegiant Funds Claim. Co-Lead Counsel followed up on the produced information in a series of conference calls with Defendants' counsel prior to the mediation.  In addition, the Parties have substantially briefed their factual and legal positions in the aforementioned mediation statements and replies exchanged prior to mediation.  Plaintiffs also reviewed hundreds of pages of testimony, and exhibits thereto, of certain Company directors and executives taken as part of a shareholder lawsuit filed in Delaware State Court: *In Re National City Corp. Shareholders Litig.*, C.A. No. 4123-CC (Del. Chancery).

Lastly, as agreed to in the Settlement Agreement, Plaintiffs have conducted and continue to conduct confirmatory discovery related to the Settlement.  More specifically, Co-Lead Counsel negotiated for certain confirmatory document discovery in order to confirm the facts and positions set forth by the Parties in their briefing and at mediation under § 12.14 of the Settlement Agreement. This confirmatory discovery includes the following category of documents: Board of Directors and the Plan's Administrative Committee minutes, presentations to the Board of Directors, communications with Plan participants during the Class Period, employee investment education programs, and information regarding the setting of loan loss reserves.  Plaintiffs' counsel are in the process of reviewing the thousands of pages of documents that have been produced to confirm certain positions taken by Defendants at mediation as well as allegations raised in the Complaint.  If any documents are reviewed which cause Co-Lead Counsel to question the fairness of the Settlement for the Settlement Class, they will alert the Court forthwith.

### E.    Settlement Negotiations

The settlement negotiations in this matter were hard fought, lengthy and certainly arms' length.  Indeed, the Parties discussed the possibility of settlement at various points in time during the

litigation.  In August 2009, the Parties began to discuss engaging an independent mediator and agreed upon a well-known, respected and experienced mediator, David Geronemus of JAMS.[9]  The mediation was held over two separate days on February 4 and February 9, 2010 in New York City, New York.  In preparation for the mediation, Plaintiffs engaged in time-consuming research, damage analysis, and litigation review, including filings in other factually related litigation against National City, culminating in the drafting and submission of a 30 page opening mediation memorandum and 15 page reply memorandum.

The mediation before Mr. Geronemus was vigorously contested.  Transpiring over two days, discussions were intense and at times contentious.  It was not until very late in the evening of the second day of mediation that the Parties reached agreement on the principal terms of the Settlement.  Following agreement of the principal terms of Settlement, several months of further intense negotiation ensued regarding the specific terms of the Settlement.  The Parties engaged in spirited and intense negotiations before resolving all issues.

In short, the negotiations in this matter were undoubtedly arms' length, intense and complex with both sides strenuously arguing their respective positions.

## F.    The Proposed Settlement

The Settlement provides that the Defendants will pay $43,000,000 to the Plan to be allocated to participants pursuant to a Court-approved Plan of Allocation.  In exchange, the Plaintiffs and the Plan will dismiss all claims in the Complaint (and release related claims), as set forth more fully in the Settlement Agreement.  The Settlement Agreement also sets forth the proposed Notice Plan to Class members and provides for the payment of attorneys' fees and Plaintiffs' Case Contribution Awards (both subject to Court approval).

---

[9] *See* Resume of Mr. Geronemus attached to the Ciolko Decl. as Exhibit 2.

## III.   REQUEST FOR ATTORNEYS' FEES

### A.   There is a Preference in the Sixth Circuit for the Percentage of the Fund Approach to Fee Determination

There are two prevailing methods for calculating appropriate attorneys' fees in common fund cases: the percentage-of-the-fund method and the lodestar/multiplier method. The percentage method requires the court to determine counsel's fee based on what it determines is a reasonable percentage of the fund recovered for those benefited by the litigation; the lodestar method requires the court to determine the number of hours reasonably expended multiplied by a reasonable hourly rate. *See, e.g.*, *Geier v. Sundquist,* 372 F.3d 784, 790-791 (6th Cir. 2004). The lodestar sum may then be "increased by a 'multiplier' to account for the costs and risks involved in the litigation, as well as the complexities of the case and the size of the recovery." *In re Sulzer Hip Prosthesis and Knee Prosthesis*, 268 F. Supp. 2d 907, 922 (N.D. Ohio 2003). As the Court in *In re Delphi Corp Sec., Derivative and "ERISA" Litig..*, 248 F.R.D. 483 (E. D. Mich. 2008) noted:

> Courts generally have discretion to apply either the percentage-of-the-fund or the lodestar method in calculating fee awards. *See Rawlings*, 9 F.3d at 516-17; *Cardizem,* 218 F.R.D. at 532. However, the Sixth Circuit has observed a "trend towards adoption of a percentage of the fund method in [common fund] cases." *Rawlings*, 9 F.3d at 515; *In re Sulzer Orthopedics, Inc.*, 398 F.3d 778, 780 (6th Cir. 2005); *see also* § 21D(a)(6) of the PSLRA, 15 U.S.C. § 78u-4(a)(6) ("Total attorneys' fees and expenses award by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class.")

*Id.* at 497. The Manual for Complex Litigation also endorses the use of the percentage of the fund method in awarding attorneys' fees in common fund cases. *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) ("MANUAL") 14.21 at 187 (2004) (commenting that "the vast majority of courts of appeals now permit or direct district courts to use the percentage-fee method in common fund cases").

Practically every Court of Appeals that has addressed the issue has approved the percentage-of-the-fund method.[10]

In recognition of their skill, extensive efforts and the excellent result achieved for the Class, and consistent with the law in the Sixth Circuit, Class Counsel request an award of attorneys' fees from the common fund created in this Action pursuant to the "percentage of the fund" method.  As noted, the Sixth Circuit has endorsed the common fund percentage approach and noted the national trend toward utilizing this method of calculating reasonable attorneys' fee requests.  *See Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513 (6th Cir. 1993).  In evaluating attorneys' fee requests relating to settlement of large, complex class actions such as this one, courts may use the "lodestar-multiplier" method as a "cross-check" of the percentage-of-fund- approach.  *See In re Sulzer Hip Prosthesis*, 268 F. Supp. 2d at 923.  "By using both the lodestar method and the percentage of the fund method, the Court has ensured its fee awards are reasonable and appropriate both individually and *in toto*."  *Id.*

**B.     Class Counsel's Fee Request Is Reasonable In Light of the Sixth Circuit's Criteria for Determining Appropriateness of Fee Requests**

Class Counsel requests $8,000,000.00 in fees, representing 18.6% of the Class Settlement Amount, plus $160,867.39 for reimbursement of out-of-pocket costs and expenses.  For the reasons that follow, these requests are fair and reasonable under the relevant standards and should be awarded in this case.  Of course, whether the requested attorneys' fees are calculated and evaluated

---

[10]  *See In re Thirteen Appeals Arising out of the San Juan DuPont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995); *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 47-49 (2d Cir. 2000); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821-22 (3d Cir. 1995); *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d at 515-16; *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); *Johnston v. Comerica Mortgage Corp.*, 83 F.3d 241, 246 (8th Cir. 1996); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 773-74 (11th Cir. 1991); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269-71 (D.C. Cir. 1993).

under the "percentage of fund" or "lodestar/multiplier" method, or both, a reviewing court must also take into account a number of additional quantitative and qualitative factors in order to place each proposed award in proper context.  In the Sixth Circuit, Courts apply the "*Ramey*" factors when considering the prospective reasonableness of a fee award in each settlement.  These factors are:

> (1)  The value of the benefit rendered to the class; (2) Society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) Whether class counsel's services were undertaken on a contingent fee basis; (4) The value of the services on an hourly basis; (5) The complexity of the litigation; and (6) The professional skill and standing of counsel on both sides.

*Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir 1974).

### 1.  The Value of the Benefit Rendered to the Class

The proposed settlement is clearly beneficial to the Class.  Pursuant to the Parties' Settlement Agreement, the Class will obtain an immediate and certain benefit of the creation of a $43 million fund. *Cf. Rankin v. Rots*, No. 02-cv-71045, 2006 WL 1791377, at *2 (E.D. Mich. June 27, 2006). This $43 million fund is an excellent result for the over fifty-seven thousand Settlement Class members .  The Settlement Class is comprised of all participants and beneficiaries of the Plan during the Settlement Class Period (defined as September 5, 2006 to December 31, 2008 for the Prudence Claim and March 25, 2002 to December 31, 2009 for the Allegiant Funds Claim).  Thus, many participants of the Plan, current and former, will receive a significant financial benefit – without any further delay.  This is no small feat given the obstacles – as detailed below and explained more fully in the Final Approval Memorandum  – facing the Class in this case.

"Courts routinely recognize that settlements never equal the full value of the loss claimed by plaintiffs." *UAW v. Gen. Motors Corp.*, No. 05-CV-73991, 2006 WL 891151, at *17 (E.D. Mich. Mar. 31, 2006).  Indeed, "[c]lass counsel and the class representatives may compromise their demand for relief in order to obtain substantial assured relief for the plaintiff class." *Williams v. Vukovich*, 720 F.2d 909, 922 (6th Cir. 1983).  Here, the benefit reached for the Plan and its

- 13 -

participants is significant in light of the attendant risks. Defendants would have surely raised compelling arguments during the course of this litigation through summary judgment and trial, if necessary. For instance, the existence of causation and damages were likely to prove extremely contentious, with powerful arguments on both sides. Defendants would likely have raised the complex issue of determining the appropriate points to begin and end the Class Period, including arguing that it should either begin and/or end at a point that would make proving damages much more difficult, if not impossible.

During mediation, Defendants argued that the Class Period should end no later than June 26, 2008 and that it probably should end on January 10, 2008 or March 19, 2008. January 10, 2008 was the date the first complaint in this matter was filed. Defendants steadfastly maintained that as of January 10, 2008, Plaintiffs apparently had sufficient information as of that date to conclude that National City was an imprudent investment. Thus, Defendants' argument goes, Plaintiffs had full discretion to move Company stock to some other investment option and should not be allowed to claim losses after January 10, 2008. Defendants also argued that after March 19, 2008, none of the Defendants had any authority, discretion, or control with respect to the Company Stock Fund. On that date, National City appointed an independent fiduciary, U.S. Trust, who thereafter was the named fiduciary of the Plan with respect to the holding of National City stock. Defendants argued that only U.S. Trust had fiduciary responsibility for the Company Stock Fund after March 19, 2008. Both of these "defenses", if meritorious in whole or in part, would have significantly decreased the potential damages available to the Plan.

Defendants' arguments were potentially problematic for Plaintiffs because in this matter, the Class Period alleged in the Complaint extended to the present. It was only during negotiations of the Settlement that the Parties, based on several factors, selected an end date for the Class Period. This is significant because where the proposed class period extends to the present, and although a class may be certified in such instance, by the end of discovery Plaintiffs would have had to have chosen

an imprudence end-date.  *See, e.g.*, *In re Schering Plough Corp.*, No. 03-CV-1204, 2008 WL 4510039, at *5 (D.N.J. Sept. 30, 2008) ("the parties do not yet have at their disposal a workable measure of when the stock was in fact imprudent because 'merits based' discovery has not begun."). Choosing an end-point, and then defending it, would have posed additional challenges to the Plaintiffs.  *See Summers v. State Street*, 453 F.3d 404, 411 (7th Cir. 2006) ("So even if the methods of litigation could feasibly determine the point at which the ESOP trustee should sell in order to protect the employee-shareholders against excessive risk, the plaintiffs have made no effort to establish that point.").

Further, proving damages caused by fiduciary misconduct is painstaking, complex and expensive.  It requires expert assistance and involves myriad calculations to enable the fact-finder to determine the effect of the alleged imprudence.  Here, it was far from settled that Plaintiffs would succeed in proving damages exceeding the proposed Settlement amount.  There was thus a very real possibility of the Plan and Class receiving no recovery after summary judgment and/or trial.

As further testament to the results achieved, despite the sizeable Class there has been only one objection to fees as of the filing of this brief.[11]  The objection, from Mr. David Zimmer of Cumming, Georgia, simply intimates that the percentage of attorneys' fees is too large.  *See* Ciolko Decl. as Exhibit 5.  Summary objections, which lack any explanation or authority, such as the objection here, should be overruled.  *See In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 378 (D.D.C. 2002) (rejecting broad, unsupported objections because "[they] are of little aid to the Court.").  The objector does not make a serious challenge to the more important point before the Court – that is, whether the requested fee reasonable in light of all the circumstances present in this

---

[11] Another objection, filed by Karen Melesky, suggests that Ms. Melesky is concerned that this action may interfere with an agreement she signed not to sue the Company.  She has not sued the Company and this action will not affect her agreement.  *See* Ciolko Decl. at Exhibit 6.

case?  As explained in detail herein, the requested attorneys' fee here is commensurate with the recovery for the Plan.

As discussed above, Plaintiffs respectfully submit that the complexities and concomitant risks of establishing damages, when weighed against the substantial and immediate benefits of the proposed $43 million Settlement to the Class as a whole, militate in favor of settlement approval.

### 2. Society's Stake in Rewarding Attorneys who Produce such Benefits in Order to Maintain an Incentive to Others

Public policy militates in favor of encouraging skilled attorneys to bring ERISA suits such as this one.[12]  Private enforcement of ERISA is specifically encouraged in the statute itself.  *See, e.g.*, 29 U.S.C. § 1132(a) (specifically empowering participants and beneficiaries to bring civil actions to redress violations and/or enforce provisions of ERISA).  By providing incentive for adroit counsel to file and litigate these actions, the common fund doctrine has the desirable effect of promoting compliance with ERISA, which, in turn, protects employees and plan participants and encourages individual retirement saving, a valuable public goal.[13]  "[A] financial incentive is necessary to entice capable attorneys, who otherwise could be paid regularly by hourly-rate clients, to devote their time to complex, time-consuming cases for which they may never be paid."  *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 687 (M.D. Ala. 1988).  "To make certain that the public interest is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding."  *Eltman v. Grandma Lee's Inc.*, No. 82-CV-1912, 1986 U.S. Dist. LEXIS 24902, at *25 (E.D.N.Y. May 28, 1986); *see also, In re WorldCom, Inc. ERISA Litig.*, No. 02-CV-4816, 2004 U.S.

---

[12] *Rankin*, 2006 WL 1791377, at *2 ("Protecting retirement funds of workers is of genuine public interest and, thus, supports a fully compensatory fee award.").

[13] *Rankin*, 2006 WL 1791377, at *2 ("[T]here is a public interest in ensuring that attorneys willing to represent employees in ERISA litigation are adequately paid so that they and others like them will continue to take on such cases.").

Dist. LEXIS 20671, at *39 (S.D.N.Y. October 18, 2004) (noting in awarding attorneys' fees in a similar action that "Lead Counsel has performed an important public service in this action. . . .").[14]

Here, Class Counsel have negotiated a settlement that will create a common fund of $43 million plus accrued interest for the benefit of the Class.

### 3.  Whether Class Counsel's Services were Undertaken on a Contingent Fee Basis

Class Counsel's services were undertaken "on a wholly contingency basis." *Rankin*, 2006 WL 1791377, at *2.  It is well recognized that an attorney is entitled to an enhanced fee when the compensation is contingent than when it is fixed on a time or contractual basis.  *See, e.g.*, *Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 382 (S.D. Ohio 2006) ("contingency serves to justify the high fees."); *Crosby v. Bowater Inc. Ret. Plan for Salaried Employees of Great N. Paper, Inc.*, 262 F. Supp. 2d 804, 814 (W.D. Mich. 2003) ("contingency serves to justify the high fees").  It is not uncommon for courts in this Circuit to award fees of 20 to 50 percent of a common fund in the typical contingent case.  *See In re Rio Hair Naturalizer Prods. Liab. Litig.*, 1996 WL 780512, at *16 (common fund is "typically 20 to 50 percent of the Fund"); *Kogan v. Aimco Fox Chase, L.P.*, 193 F.R.D. 496, 503-04 (E.D. Mich. 2000); *In re Telectronics Pacing Systems, Inc.*, 137 F. Supp. 2d 1029, 1046 (S.D. Ohio 2001) ("the range of reasonableness has been designated as between twenty to fifty percent of the common fund"); *see also Manual* § 24 .121 (1995) (noting that most district courts select a percentage in the range from 24% to 30% of the fund).

---

[14] *See also Rankin*, 2006 WL 1791377, at *2 ("Absent adequate compensation, counsel will not be willing to undertake the risk of common fund class action litigation. Counsel who create a common fund for the benefit of a class are entitled to a payment of fees and expenses from the fund relative to the benefit achieved") (citing, *inter alia*, *Smillie v. Park Chem. Co.*, 710 F.2d 271, 275 (6th Cir.1983)).

Even more so than other cases litigated on a contingent basis, all of which contain a degree of risk, the instant case faced significant obstacles since its filing.  Without Settlement, there was a very real possibility that Class members would receive nothing.  For instance, at summary judgment or trial, Defendants would have likely raised, *inter alia*, the following defenses: (i) Defendants did not owe a fiduciary duty to the Plan participants; (ii) if any duty was found to exist, Defendants clearly complied with their duties under ERISA, including the duty to disclose complete and accurate information; (iii) National City stock was not an "imprudent" plan investment during the relevant time period in question; and (iv) Defendants did not function as ERISA fiduciaries with regard to Plan investments in National City stock.  The Court could have found these defenses to have merit.

Moreover, Defendants would have surely raised other compelling arguments during the course of this litigation through class certification, summary judgment and trial, if necessary.  For instance, as discussed above, the existence of causation and damages would be extremely contentious, with powerful arguments on both sides.  Defendants would likely have raised the complex issue of determining the appropriate points to begin and end the Class Period, including arguing that it should either begin and/or end at a point that would make proving damages much more difficult, if not impossible.  *See, e.g.*, *In re Schering Plough Corp.*, 2008 WL 4510039, at *5 ("the parties do not yet have at their disposal a workable measure of when the stock was in fact imprudent because 'merits based' discovery has not begun.").  Choosing an end-point, and then defending it, would have posed additional challenges to the Plaintiffs.  *See Summers*, 453 F.3d at 411.

As explained at greater length in the Final Approval Memorandum, recent Circuit-level analogous case law developments have strengthened the  positions of companies facing ERISA breach of fiduciary duty actions by asserting that plaintiffs must prove companies are undergoing extreme or dire circumstances to deem their stock imprudent.  For example, in *Quan v. Computer*

*Scis. Corp.,* Nos. 09-CV-56190, 09-CV-56248, slip op. (9th Cir. Sept. 30, 2010), the Ninth Circuit affirmed the dismissal of an analogous action on summary judgment while setting an extremely high standard for plaintiffs to overcome a "presumption of prudence" certain courts have imposed as an obstacle for pension plan participants to overcome in these suits.  Moreover, the Seventh Circuit recognized that a fiduciary who sells company stock too quickly may be sued for taking that action. *See Summers,* 453 F.3d at 411.  This "damned if you do, damned if you don't" argument would merit consideration in this case as the litigation moved forward.

### 4.    The Value of the Services on an Hourly Basis

In this Circuit, the lodestar figure is used to confirm the reasonableness of the percentage of the fund award.  *Bowling v. Pfizer*, 102 F.3d at 777, 780 (6th Cir. 1996).  Class Counsel spent over 3,660.65 combined hours in prosecuting this case on behalf of the Class.  And of course, work on the case has not ended, nor will it end anytime soon.  Class Counsel, and in particular, Co-Lead counsel will continue to incur additional hours in connection with the Settlement approval in general, including in connection with working with the Independent Fiduciary and preparing for the Final Fairness Hearing.  Beyond that, past experience teaches that Class Counsel will spend a substantial amount of additional time over the next year or more following final approval responding to inquiries from Class members, interacting with bank personnel with respect to technical matters concerning the Qualified Settlement Fund, and generally shepherding implementation of a settlement affecting more than 57,000 participants.[15]  In fact, since Notice has been disseminated to the Class, Co-Lead Counsel has responded to dozens of emails and phone calls from Class members.  *See* the Declaration of Edwin J. Mills ("Mills Decl.") at 10.  Further, as noted above, Class Counsel is

---

[15] In the *Evans v. Akers, et. al, No. 04-CV-11380* (D. Mass.) ERISA settlement, for example, in which BTKMC was lead counsel, BTKMC is still responding to inquiries from class members even though the court gave final approval to the settlement in October 2009.

reviewing the thousands of pages in confirmatory discovery.  Co-Lead Counsel estimates that the time needed to complete review of the confirmatory discovery and handle settlement administration, as well is prepare for the Final Fairness Hearing will take well over 100-150 attorney hours.[16]  This work represents a significant portion of time that Class Counsel will spend for the Class that is not reflected in the lodestar calculation described below.

Here, pursuant to the Court's order appointing Co-Lead Counsel, Co-Lead Counsel conducted this litigation in an efficient a manner as possible.  Co-Lead Counsel did everything in their power to keep costs and attorneys' fees to a minimum, but the complexity of this Action required a significant amount of work by a number of attorneys and non-attorney support staff.  As much as possible, Co-Lead Counsel managed the assignment of work in this case to avoid unnecessary duplicative or overlapping work.  Where appropriate, associates and junior lawyers, and paralegals with lower hourly rates, were delegated work.

Class Counsel's combined lodestar is approximately $1,888,740.80.  The declarations of each individual Class Counsel establishes the reasonableness of their rates and expenses and makes clear that Class Counsel was engaged in significant work for the benefit of the Settlement Class during the litigation.

Here, Class Counsel extensively reviewed publicly available documents, hundreds of pages of Plan-related documents, including master Plan documents, Summary Plan Descriptions, and Summary Material Modifications, documents filed with the SEC and publicly available analysts reports as well as materials available from other Company litigations.  This information served to augment the significant amount of information Plaintiffs had accumulated from their investigations

---

[16] If the Court would find it helpful, Co-Lead Counsel can submit an updated lodestar amount two days prior to the Final Fairness Hearing.

and helped Class Counsel in preparing and filing the Complaint.  Plaintiffs' Counsel also drew on their extensive knowledge of ERISA law with respect to fiduciary duties relating to the investment of company stock in defined contribution plans to plead the case as strongly as possible, including with reference to the factual results of their investigation.

As noted in section II.B *supra*, Class Counsel also spent significant time discussing and preparing the Rule 26(f) Report which took several days.  Additionally, Plaintiffs and Class Counsel dedicated much time to review and respond to Defendants' motion to re-assign judges.  Further, Plaintiffs opposed Defendants' motion to dismiss.  The mediation in this case was also quite lengthy and involved.  After agreeing to settle this matter, the Parties continued with several months of negotiation regarding the specific terms of the Settlement, the scope of the release, the definition of the class, the proper Plan of Allocation, and other important and necessary terms of the proposed Settlement.  At all times, counsel for the Parties engaged in spirited negotiations.  In short, Class Counsel's "efforts in posturing this case for trial . . . played a role in spurring the settlement, [and] produced a substantial payout to the class." *In re Newbridge Networks Sec. Litig.*, No. 94-cv-1678, 1998 U.S. Dist. LEXIS 23238, at *11 (D.D.C. Oct. 22, 1998).

The extent of Class Counsel's time spent litigating this case should also be evident in the descriptions of their work in the analysis of the other Sixth Circuit factors analyzed above and below and in the Ciolko and Mills Declarations and Final Approval Memorandum.

### 5.  The Complexity of the Litigation

The complexity of the issues involved in this litigation as well as the duration of time it has taken to litigate this action favors an award in the amount requested.  ERISA class actions, in addition to being relatively novel, are also extremely complex and involve the intricate application of a decidedly complicated statute.  As one court recently noted, "ERISA law is highly complex and quickly-evolving area of the law." *Smith v. Krispy Kreme Doughnut Corp.*, No. 05-CV-00187, 2007

WL 119157, at *2 (M.D.N.C. Jan. 10, 2007); *see also, In re Sprint Corp. ERISA Litig.,* 443 F. Supp.

2d 1249, 1270 (D. Kan. 2006) ("The applicable law is complex, unsettled, and in a rapid state of

development").  In *In re Global Crossing Sec. & ERISA Litig.,* the court noted:

> The ERISA cases would pose additional factual and legal issues. Fiduciary status, the scope of fiduciary responsibility, the appropriate fiduciary response to the Plans' concentration in company stock and [company] business practices would be issues for proof, and numerous legal issues concerning fiduciary liability in connection with company stock in 401(k) plans remain unresolved.  These uncertainties would substantially increase the ERISA cases' complexity, duration, and expense – and thus militate in favor of settlement approval.

225 F.R.D. 436, 456 (S.D.N.Y. 2004).

Some of the complex legal issues involved in this matter included: (i) what individuals and

entities qualified as fiduciaries of the Plan and when they so qualified; (ii) what duties did such

fiduciaries have to the Plan; (iii) what obligations did such fiduciaries have to the participants of the

Plan; (iv) to what extent may each fiduciary be held liable for the losses incurred by the Plan; (v)

how to properly measure damages and (vi) whether and to what extent members of the Class could

be charged with knowledge of the actions which allegedly caused National City stock to be

imprudent during the Class Period.

Were the Action to continue, Plaintiffs believe it likely Defendants' motion to dismiss the

Complaint would be denied.  Thereafter, merits discovery would begin full bore, with written

discovery, voluminous document production and review, numerous depositions and expert reports

and discovery as a prelude to dispositive motions, trial, and likely appeals, thus delaying final

resolution of Plaintiffs' claims for years.  These efforts would consume monumental time and

expense by the Parties as well as the precious resources of this Court, with Plaintiffs and the Class

possibly obtaining a recovery below the proffered settlement, or no recovery at all.

**6.      The Professional Skill and Standing of Counsel on Both Sides**

This Settlement was achieved by Class Counsel – who include some of the preeminent ERISA class action attorneys in the country – with decades of experience in prosecuting and trying complex actions.  Here, Co-Lead Counsel have substantial experience in handling class actions, other complex litigation, and claims of the type asserted in this Action.  Co-Lead Counsel, together and separately, have litigated numerous similar ERISA class action cases.  Indeed, Co-Lead Counsel BTKMC has the rare benefit of having tried a similar company stock action to verdict (upon information and belief, one of only four to ever go through trial).  Thus, they are in a unique position to truly evaluate the wisdom of settling the claims prior to a risk-fraught trial.  Here, BTKMC, headed by Joseph H. Meltzer, chair of the ERISA Litigation Department, and his partner Edward W. Ciolko at BTKMC are experienced ERISA class action attorneys and recommend this Settlement.[17] Mr. Meltzer and BTKMC have been named Lead or Co-Lead Counsel in numerous breach of fiduciary class actions across the nation, including the following within this Circuit: *In re Huntington Bancshares ERISA Litig.*, No. 08-CV-00197 (S.D. Ohio); *Nowak v. Ford Motor Co.*, No. 06-CV-11718 (E.D. Mich.); *In re Lear ERISA Litig.,* No. 06-CV-11735 (E.D. Mich. Apr. 10, 2006); *In re Diebold ERISA Litig.,* No. 06-CV-0170 (N.D. Ohio); *Gee v. UnumProvident Corp.*, No. 03-CV-1552 (E.D. Tenn.). [18]  BTKMC's ERISA department, under Mr. Meltzer and Mr. Ciolko's guidance, has prosecuted numerous ERISA cases, with courts rendering favorable opinions in a

---

[17]     *See* firm resume of BTKMC attached to the Ciolko Decl. as Exhibit 7.

[18]     Other actions in which BTKMC was appointed Lead or Co-Lead Counsel include: *In re Advanta Corp. ERISA Litig.*, No. 09-CV-04974 (E.D. Pa. June 4, 2010); *In re R.H. Donnelley ERISA Litig.*, No. 09-CV-07571 (N.D. Ill. Mar. 16, 2010); *Hanna v. YRC Worldwide, Inc. et al.,* No. 09-cv-02593-JWL/JPO (D. Kan. Mar. 2, 2010); *Dann v. Lincoln National Corp. et al.,* No. 08-CV-5740 (E.D.P.A. June 1, 2009)*; In re: SLM Corp. ERISA Litig., et al.,* Master File No. 08-CV-4334 (S.D.N.Y. Sept. 30, 2008); *Dresslar v. Wellpoint, Inc. et al.,* No. 08-CV-00679-DFH-TAB (S.D. Ind. May 22, 2008); *In re Beazer Homes USA, Inc. ERISA Litig.,* No. 07-CV-00952-RWS (N.D. Ga. Apr. 30, 2007).

number of decisions denying defendants' motions to dismiss and/or for summary judgment.[19]  In addition to its extensive litigation experience, the firm has also successfully engaged in extensive, intricate and intense settlement negotiations, including court-ordered mediations.

SSB also has extensive ERISA class action experience in the Sixth Circuit, and, indeed, throughout the country.  For example, SSB served as co-lead counsel for the ERISA class in *In re: Cardinal Health ERISA Litigation*, 225 F.R.D. 552 (S.D. Ohio 2005).  SSB also served as co-lead counsel (with BTKMC and another firm) in *In re AOL Time Warner ERISA Litig.* (*Grant v. AOL Time Warner, Inc.,* No. 02-CV-8853, MDL Docket No. 1500, 2003 U.S. Dist. LEXIS 16895 (S.D.N.Y. Sept. 23, 2003), where a $100 million settlement was obtained and approved as fair.[20] Among the other appointments of SSB in ERISA actions is *Overby v. Tyco Int'l Ltd.,* No. 2-CV-1357-B (D.N.H. Dec. 20, 2002), where a $70.525 million settlement was obtained and approved as fair.  Edwin J. Mills, an experienced attorney in ERISA, is Of Counsel to SSB, and was the lead attorney from SSB handling this matter.

The quality of opposing counsel is also relevant to the evaluation of class representation. *See, e.g.*, *Ramey*, *supra* 508 F.2d at 1196; *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985) ("The quality of opposing counsel is also important in evaluating the quality of plaintiffs' counsel's work").  Defendants were represented vigorously by experienced and able counsel from a prominent firm with ample resources.  Counsel for Defendants, Jones Day and

---

[19]    *See, e.g.*, *Dann v. Lincoln National Corp. et al.*, No. 08-CV-5740, 2010 WL 1644276 (E.D. Pa. Apr. 20, 2010);  *In re Hartford Fin. Svc. Grp. Inc. ERISA Litig.*, No. 08-CV-01708, 2010 WL 135186 (D. Conn. Jan. 13, 2010); *In re Merck & Co., Inc. Vytorin ERISA Litig.*, No. 08-CV-1974, 2009 WL 2834792 (D.N.J. Sept. 1, 2009); *Board of Trustees of the AFTRA Retirement Fund, et al. v. JPMorgan Chase Bank, N.A., et al.*, No. 09-CV-00686 (S.D.N.Y. May 28, 2009); *Brieger v. Tellabs, Inc.*, 473 F. Supp. 2d 878 (N.D. Ill. 2007); *In re Lear ERISA Litig.*, No. 06-CV-11735 (E.D. Mich. Apr. 10, 2006).

[20]    *See* firm resume of SSB attached to the Mills Dec. as Exhibit A.

Wachtell, Lipton, Rosen & Katz, are two of the most well-respected law firms in the country, have relevant expertise and experience in complex litigation, including actions brought under ERISA. The fact that Class Counsel was able to negotiate such a favorable settlement when Defendants were being represented by such a high caliber of legal advocates militates in favor of granting this Motion.

Based on (1) their extensive and broad based experience litigating and successfully resolving ERISA breach of fiduciary duty cases, and (2) after diligently investigating the claims and fully exploring the claims and defenses during the mediation process and while negotiating a potential settlement, Co-Lead Counsel strongly recommend this Settlement.

## C.    Awards In Similar Cases

The reasonableness of Class Counsel's fee request is also supported by awards in similar cases.  In particular, the fee request is directly in line with fee requests in analogous ERISA class actions in the Sixth Circuit.  *See, e.g., In re National City Corp. Sec., Derivative & ERISA Litig.*, No. 109-nc-70002-SO (N.D. Ohio Apr. 26, 2010) (33% of the Settlement Fund); *In re Delphi Corp. Sec., Derivative & ERISA Litig.,* 248 F.R.D. 483 (E.D. Mich. 2008) (awarding 20% of the Settlement Fund);  *In re Visteon Corp. ERISA Litig.*, No. 05-CV-71205 (E.D. Mich. March 9, 2007) (awarding 28% of the Settlement Fund);  *In re Lear ERISA Litig.,*  No. 06-CV-11735 (E.D. Mich. 2006) (awarding 30% of the Settlement Fund); *Gee v. UnumProvident Corp., et al*, No. 03-CV-147 (E.D. Tenn. Jan. 25, 2008) (awarding 32% of the Settlement Fund);  *In re Broadwing ERISA Litig.*, No. 02-CV-00857 (S.D. Ohio 2002) (awarding 23% of the Settlement Fund).  Moreover, the fee request is less than other requests in other class actions within the Sixth Circuit.  *See, e.g.,  In re Cincinnati Microwave Inc. Sec. Litig.*, Consolidated Master File No. C-1-95-905, Order and Final Judgment (S.D. Ohio Mar. 21, 1997) (awarding 30%); *Meyers v. Abbott Labs.*, No. 97-C-612, Memorandum (5th Cir. Ct. Davidson County, Tenn., Mar. 26, 1998) (awarding 25%); *Adams v. Standard Knitting*

*Mills, Inc.*, [1978 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 96,377 (E D. Tenn. Jan. 6, 1978) (35.8% award).

Nationwide, an award of one-third of a common fund created for the benefit of an aggrieved class in a large, complex class action is recognized as an appropriate benchmark.  *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005) (review of 289 settlements demonstrates "average attorney's fees percentage [of] 31.71%" with a median value of one-third).  Class Counsel's request of $8,000,000.00 million in attorneys' fees represents 18.6% of the common fund created by the Settlement of this Action and is in line with both awards in complex class actions generally, *see above*, and those approved as part of settlements of analogous breach of fiduciary duty "company stock" cases that have settled in recent years around the country.  *See, e.g.*, *In re Xerox Corp. ERISA Litig.*, No. 02-CV-1138 (D. Conn. Apr. 14, 2009) (Order granting motion for 30% of settlement amount as Attorneys' Fees); *Mehling v. New York Life Ins. Co., et al.* 248 F.R.D. 455, 464, 468 (E.D. Pa. 2008) (granting 30% of common fund); *Spivey v. Southern Co.*, No. 04-CV-1912-RWS (N.D. Ga. August 11, 2007) (Order and Final Judgment) (awarding 27.5% of common fund); *Koch v. Dwyer*, No. 98-CV-05519 (S.D.N.Y. May 7, 2002) (awarding 30% of $6.4 million common fund); *In re ADC Telecomm., Inc.*, No. 03-CV-2989 (D. Minn. Oct. 16, 2006) (awarding fee of 30% of $3.25 million settlement); *In re Westar Energy, Inc., ERISA Litig.*, No. 03-CV-4032 (D. Kan. July 27, 2006) (awarding 30% of $9.25 million settlement); *Kling v Fidelity Mgmt. Trust Co.*, No. 01-CV-11939 (D. Mass. June 29, 2006) (awarding 30% of $10.85 million settlement fund); *In re CMS ERISA Litig.*, Master File No. 02-72834 (E.D. Mich June 27, 2006)) (Order and Final Judgment granting 28.5% of common fund award); *In re Mirant Corp. ERISA Litig.*, No. 03-CV-1027-RWS (N.D. Ga. Nov. 16, 2006) (Order of Final Judgment granting 27.5% of common fund award); *In re Household Int'l, Inc. ERISA Litig.*, No. 02-CV-07921 (N.D. Ill. Nov. 22, 2004) (order granting approval of Settlement Agreement calling for attorneys fees of 30% of settlement).

### D. Lodestar Cross-Check And Multiplier

A lodestar cross-check is a "suggested practice." *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 735 (3d Cir. 2001), utilized by some courts as a second layer of review regarding requested attorneys' fees in these type of cases. *Cf. Rawlings v. Prudential-Bache Properties,* 9 F.3d 513, 516 (6th Cir. 1993) (noting that "[t]he lodestar method better accounts for the amount of work done, while the percentage of the fund method more accurately reflects the results achieved"). Once the lodestar is calculated, courts often approve a "multiplier" to the actual fees incurred, especially in a cutting edge, large and complex actions such as the instant one, in light of litigation risks and counsel's efforts in achieving a settlement. *See In re Union Carbide Corp. Consumer Products Business Sec. Litig.*, 724 F. Supp. 160, 164 (S.D.N.Y. 1989) ("[c]ontingent fee risk is the single most important factor in awarding a multiplier"). "Enhancing the lodestar with a separate multiplier" has been specifically recognized by courts across the nation, including the Sixth Circuit, as a "means to account for the risk an attorney assumes in undertaking a case, the quality of the attorney's work product, and the public benefit achieved." *Rawlings*, 9 F.3d at 516.

Class Counsel's aggregate lodestar to date is a proposed "multiplier" of approximately 4.2 (multiplying hours worked for each attorney and staff person by their respective rates – all of which are in line with those charged by national complex class action law firms- and including expenses). More specifically, Class Counsel has employed 3,660.65 hours and $ 1,888,740.80 in attorney and professional staff "lodestar" in prosecuting and achieving settlement of this Action. Given Class Counsel's requested fee award of $8,000,000, the resulting "lodestar multiplier crosscheck" is 4.2 (total award requested/total lodestar). Obviously, as noted above, this lodestar is inherently conservative as it does not reflect the additional work Class Counsel will undertake in implementing the Settlement; hence the multiplier will shrink further. Regardless, the lodestar above is inherently reasonable and quite modest under Sixth Circuit standards. *See, e.g.*, *Manners v. Am.Gen. Life Ins.*

*Co.*, No. 98-CV-266, 1999 U.S. Dist. LEXIS 22880, at * 93 (M.D. Tenn. Aug. 11,1999) (observing that multipliers in similar litigations "have ranged from 1-4 and have reached as high as 10"); *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (noting multipliers of 4 and 5 in other cases).

Moreover, this multiplier is well within the range of multipliers awarded by courts in other districts.  *See, e.g., In re Buspirone Antitrust Litig.*, MDL Docket 1413 (S.D.N.Y. Order of April 7, 2003) (awarding fee equal to multiplier of 8.46); *Weiss v. Mercedes-Benz of N. Am., Inc.*, 899 F. Supp. 1297, 1304 (D.N.J. 1995), *aff'd*, 66 F.3d 314 (3d Cir. 1995) (multiplier of 9.3 times hourly rate); *In re Rite Aid Corp. Secs. Litig.*, 146 F. Supp. 2d 706, 736 (E.D. Pa. 2001) (multiple of over 6); *In re Triangle Indus. S'holders Litig.*, No. 10,466, 1991 Del. Ch. LEXIS 203 (Del. Ch. Dec. 19, 1991) (awarding fee equal to 6.6. multiple on $70 million recovery); *Cosgrove v. Sullivan*, 759 F. Supp. 166 (S.D.N.Y. 1991) (awarding fee equal to multiplier of 8.84); *RJR Nabisco Inc. Sec. Litig.*, MDL No. 818, 1992 WL 210138 (S.D.N.Y. Aug. 24, 1992) (6 multiple); *Boston & Maine Corp. v. Sheehan, Phinney, Bass & Green, P.A.*, 778 F.2d 890, 894 (1st Cir. 1985) (6 multiple).

The multiplier is also more than on par (and quite reasonable when compared) with awards in directly analogous ERISA class actions.  *See e.g., In re Honeywell ERISA Litig.*, No. 03-CV-1214 (D.N.J. 2006) (approving multiplier of 3.7); *In re Bristol Meyers Squibb Co., ERISA Litig.,* No. 02-10129 (S.D.N.Y. Oct. 12, 2005) (Order) (3.9 multiplier); *In re Household International, Inc. ERISA Litig.*, No. 02-07921 (N.D. Ill. filed Nov. 22, 2004) (order approving multiplier of 4.65); *In re Dynegy ERISA Litig.,* No. 02-3076 (S.D. Tex. Nov. 24, 2004) (Final Order) (4.4 multiplier);; *Kolar v. Rite Aid Corp*, No. 01-CV-1229, 2003 U.S. Dist. LEXIS 3646, at *5 (E.D. Pa. Mar. 11, 2003) (4.5 multiplier).

Considering the circumstances of this litigation, this multiplier – similar to those recently approved by courts in this Circuit – is more than fair.  Accordingly, the modest lodestar in this matter strongly supports the reasonableness of the fee request.

## E.      Reimbursement And Payment of Class Counsel's Expenses

It is axiomatic that lawyers whose efforts succeed in creating a common fund for the benefit of a class are entitled not only to reasonable fees, but also to recover reasonable expenses from the fund which that were necessary to bring the action to a climax.  *Telectronics*, 137 F. Supp. 2d at 1036 ("Counsel contributed to the creation of the Settlement Fund, and accordingly, are entitled to receive a reimbursement of their out-of-pocket expenses in the [requested] amount").

Class Counsel, in the prosecution of this complex case, expended at least $160,867.39. These expenses reflect costs expended for purposes of prosecuting this litigation, including substantial fees for experts; deposition costs; and travel expenses.[21]  Reimbursement of similar expenses is routinely permitted.  *See e.g.*, *Oh v. AT & T Corp.*, 225 F.R.D. 142, 154 (D.N.J. 2004) (finding the following expenses reasonable and appropriately incurred – "(1) travel and lodging, (2) local meetings and transportation, (3) depositions, (4) photocopies, (5) messengers and express services, (6) telephone and fax, (7) Lexis/Westlaw legal research, (8) filing, (10) postage, (11) the cost of hiring a mediator, and (12) NJ Client Protection Fund-*pro hac vice*").

## F.      Case Contribution Awards For Named Plaintiffs

Class Counsel respectfully requests that the Court approve the payment of Case Contribution awards in an amount of $7,500.00 for each Co-Lead Plaintiff and $2,000 for each Named Plaintiff. The enforcement of the ERISA laws by private litigants is in the interest of the public and should be

---

[21] The request for reimbursement of expenses also includes a conservative estimate of expenses that will be incurred for travel to the Final Fairness Hearing on November 30, 2010.

encouraged.  *See, e.g.*, *Thornton v. E. Tex. Motor Freight*, 497 F.2d 416, 420 (6th Cir. 1974).
"Numerous courts have recognized that named plaintiffs in class actions are entitled to individual
awards as compensation for their time and effort in asserting the interests of the class, meeting
discovery and other litigation responsibilities, and working with counsel to advance the interests of
the class." *Feerer v. Amoco Prod. Co.*, 242 F.3d 1259 (10th Cir. 2001) (citations omitted).[22]

 In the instant action, the Plaintiffs, and Co-Lead Plaintiffs, in particular, stepped forward and
pursued the Class's interests by filing suit on behalf of the Settlement Class and the Plan,
undertaking the responsibilities attendant with serving as Plaintiffs.  They provided documents and
information in response to discovery requests, aided Class Counsel in describing relevant facts about
National City, the Plan and information supporting the claims presented in the Complaint and helped
make strategic decisions, including negotiation and approval of the Settlement's terms.  *See*
Declarations of Co-Lead Plaintiffs attached to Ciolko Declaration as Exhibits 24 and 25.  In short,
they contributed significantly to the prosecution of this action.

 Indicative of the inherent propriety of the requested case contribution award, the amounts
requested here are easily in line with amounts typically awarded in analogous cases.  *See, e.g. In re
National City Corp. Sec., Derivative & ERISA Litig.*, No. 109-nc-70002-SO (N.D. Ohio Apr. 26,
2010) (Order and Final Judgment) (awarding $20,000 each to Class Representatives);.

 For all of these reasons, Class Counsel submit that the requested Case Contribution awards
are appropriate and reasonable.

---

[22] *See also, Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985) ("The propriety of
allowing modest compensation to class representatives seems obvious . . . .").

## IV.    CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court award Class Counsel attorneys' fees in the amount of $8,000,000.00 million and expenses in the amount of $ 160,867.39 and approve Case Contribution awards to each of the two Co-Lead Plaintiffs in the amount of $7,500 each and the remaining Named Plaintiffs in the amount of $2,000 each.

Dated: October 20, 2010

<div style="margin-left:40%">

/s/ Edward W. Ciolko
Edward W. Ciolko
Joseph H. Meltzer
Mark K. Gyandoh
**BARROWAY TOPAZ KESSLER
  MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
*Interim Co-Lead Counsel for ERISA
Plaintiffs*

**STULL, STULL & BRODY**
/s/ Edwin J. Mills
Edwin J. Mills
Michael J. Klein
6 East 45th Street
New York, NY 10017
Telephone: (212) 687-7230
Facsimile: (212) 490-2022

*Interim Co-Lead Counsel for ERISA
Plaintiffs*

**JAMES E. ARNOLD &
  ASSOCIATES, LPA**
James E. Arnold
Scott J. Stitt
471 East Broad Street, Suite 1400
Columbus, OH 43215
Telephone: (614) 460-1600
Facsimile: (614) 469-1066

**BAILEY & GLASSER LLP**
Gregory Y. Porter

</div>

910 17th Street, Suite 800
Washington, DC 20006
Telephone: 202-463-2101
Facsimile: 202-463-2103

**LAW OFFICES OF ALFRED G.**
 **YATES, JR., PC**
Alfred G. Yates, Jr.
519 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA 15219

**THE GRIFFIN LAW FIRM**
Mark Griffin
175 Honeybelle Oval
Orange, OH 44022
Telephone: (216) 346-7376
Facsimile: (216) 861-6679

**IZARD NOBEL LLP**
Robert A. Izard
20 Church St., Suite 1700
Hartford, CT 06103
Telephone: (860) 493-6292
Facsimile: (860) 493-6290

**MEHRI & SKALET, PLLC**
Cyrus Mehri
Janelle Carter
1250 Connecticut Avenue, NW, Suite 300
Washington, DC 20036
Telephone: (202) 822-5100
Facsimile: (202) 822-4997

**MAJOR KHAN, LLC**
Major Khan
20 Bellevue Street
Weehawken, NJ 07086
Telephone: (646) 546-5664
Facsimile: (646) 546-5755
Thomas J. McKenna

**GAINEY & McKENNA**
Thomas J. McKenna
295 Madison Avenue
New York, NY 10017
Telephone: (212) 983-1300
Facsimile: (212) 983-0383

**LINER YANKELEVITZ SUNSHINE &**
    **REGENSTREIF, LLP**
Ronald S. Kravitz
199 Fremont Street, 20th Floor
San Francisco, CA 94105-2255
Telephone: (415) 489-7700
Facsimile: (415) 489-7701

**POWERS FRIEDMAN LINN, PLL**
Laurence Powers
23240 Chagrin Boulevard, Suite 180
Cleveland, OH 44122-5469
Telephone: (216) 514-1180
Facsimile: (216) 514-1185

**WEISMAN KENNEDY & BERRIS CO.,**
**LPA**
R. Eric Kennedy
Daniel P. Goetz
Midland Building
101 Prospect Avenue
Cleveland, OH 44115
Telephone: (216) 781-1111

**COUGHLIN STOIA GELLER**
    **RUDMAN & ROBBINS, LLP**
Samuel H. Rudman
David A. Rosenfeld
Mark Reich
Mario Alba, Jr.
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: (631) 367-7100
Facsimile: (631) 367-1173

***Attorneys for ERISA Plaintiffs***